**Laffat A. SRYOCK, Plaintiff-Appellant,**

**v.**

**Margaret M. HECKLER, Defendant-Appellee.**

No. 84–8940.

United States Court of Appeals, Eleventh Circuit.

July 2, 1985.

Bruce K. Billman, Macon, Ga., for plaintiff-appellant.

Frank L. Butler, III, Asst. U.S. Atty., Macon, Ga., for defendant-appellee.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

PER CURIAM:

Claimant/appellant Laffat Sryock appeals from the Secretary's decision denying him social security disability benefits. We remand for further administrative proceedings.

## I. FACTS

Appellant is a 52-year old high school graduate who formerly worked as an electrician. He suffers from chronic obstructive pulmonary disease (COPD) with bullous emphysema. Although appellant has complained of frequent shortness of breath, his pulmonary functions tests were essentially normal. Dr. Grant, his treating physician, was of the opinion that appellant was disabled.

The Administrative Law Judge (ALJ) found that claimant suffered from COPD and emphysema without significant respiratory complications; that he was unable to perform his past relevant work as an elec-

trician; that he retained the residual functional capacity to perform at least light work (as defined in 20 C.F.R. § 404.1567), except for work involving a "heavily polluted environment"; and that, under Rule 202.14 of the Medical-Vocational Guidelines ("the grids"), 20 C.F.R. part 404, subpart P, App. 2, table no. 2 [hereinafter cited as "Med.-Voc. Guidelines"], appellant was not disabled.[1] Sryock then commenced this action in district court. The district court affirmed the Secretary's decision and this appeal followed.

## II. DISCUSSION

### A. *Rejection of Treating Physician's Opinion*

Appellant contends that the Secretary's decision is not supported by substantial evidence, in that the ALJ failed to articulate specific reasons for rejecting the opinion of Dr. Grant, the treating pulmonary specialist. We disagree. "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. 20 C.F.R. § 404.1526 (1980)." *Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981). In view of the clinical evidence supporting the ALJ's determination, it was not error to reject Dr. Grant's conclusion as to disability.

### B. *Non-Exertional Impairments and The Use of "The Grid"*

Appellant argues that in light of his non-exertional impairment (the inability to work in a heavily polluted environment) it was improper for the Secretary to rely on the grids in reaching a disability determination.

In a disability determination, a claimant has the initial burden of showing an impairment serious enough to prevent work in his or her previous job. *Broz v. Schweiker,* 677 F.2d 1351, 1355 (11th Cir.1982), *vacated*

---

1. In making this finding, the ALJ expressly rejected Dr. Grant's opinion as contrary to the clinical findings and other evidence in the record.

and *remanded sub nom. Heckler v. Broz,* 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311, *adhered to,* 711 F.2d 957, *modified,* 721 F.2d 1297 (11th Cir.1983). If this burden is met, the burden shifts to the Secretary to prove that the claimant is capable, considering his age, education, and work experience, of engaging in any other kind of substantial gainful work which exists in the national economy. *Id.; see* 42 U.S.C. § 423(d)(2)(A).

■ The Medical-Vocational Guidelines come into play at this second stage. Those guidelines include detailed grid regulations which, based on a claimant's residual functional capacity,[2] age, education, and work experience, compel a conclusion on the issue of ability to perform other substantial work, and thus as to whether the claimant is disabled. *Broz,* 677 F.2d at 1355; Med.-Voc. Guidelines, § 200.00(a).

The grid regulations are not applicable in all situations.

At a given residual functional capacity, if a claimant is capable of some work at that level but not a full range of work, then that level of the grids is not applicable. [Med.-Voc. Guidelines] at §§ 201.-00(h), (i), 202.00(b); [other citations omitted]. Second, in determining residual functional capacity only exertional limitations are considered, *i.e.* ability to lift, stand, push, pull, handle, etc. If a claimant has nonexertional impairments that significantly limit the ability to do basic work activities—for example, sensory impairments such as skin or respiratory sensitivity and mental or emotional impairments—then the grid regulations do not apply. *Id.* at § 200.00(e).

*Broz,* 677 F.2d at 1356. However, when both exertional and nonexertional[3] work impairments exist the grids may still be applicable.[4] "[N]on-exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level." *Murray v. Heckler,* 737 F.2d 934, 935 (11th Cir.1984); *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 536–37 (6th Cir. 1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). Therefore, when both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Courts will review this determination only to determine whether it is supported by substantial evidence. *See Murray,* 737 F.2d at 935; *Allen v. Secretary of Health and Human Services,* 726 F.2d 1470, 1473 (9th Cir.1984); *Dellolio v. Heckler,* 705 F.2d 123, 127–28 (5th Cir. 1983); *Hernandez v. Heckler,* 704 F.2d 857, 862 (5th Cir.1983); *Kirk,* 667 F.2d at 537.

2. "Residual functional capacity" is a determination of a claimant's remaining physical abilities to perform work. 20 C.F.R. § 404.1545. The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, pull, etc. *Id.* The claimant's residual functional capacity is then used to determine his or her capability for performing various designated levels of work (sedentary, light, medium, heavy, or very heavy). *See* 20 C.F.R. § 404.1567. For claimants found capable of sedentary, light, or medium work, the grid regulations provide tables to be used in making disability determinations.

3. Nonexertional limitations include environmental restrictions. "Environmental restrictions are those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work, *e.g.,* an inability to tolerate dust or fumes." Med.-Voc. Guidelines at § 200.00(e).

4. The regulations state that:

where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contra-indicated by the nonexertional limitations.

Med.-Voc. Guidelines at § 200.00(e)(2).

In the present case, the ALJ appears to have found, in vague terms, the existence of a nonexertional limitation. As stated by the ALJ, appellant is physically able to perform light work but, due to breathing problems accompanying his disease, he cannot do this work in a "heavily polluted environment." We find no problem with the evidence upon which the ALJ's findings were made. However, the ALJ made no findings as to whether this nonexertional, environmental limitation was severe enough to prevent appellant from performing a wide range of light work which exists in the national economy.

It is not clear from the record what sort of pollution or other impurities in the work environment would make it impossible for this claimant to perform light work. Depending upon the extent of this nonexertional impairment, it may be that the grids should not have been used. If this environmental limitation merely limits appellant from working in environments that exist only rarely in the work place, so that available light work is not significantly restricted by this limitation, then the use of the grids, which compelled a finding of no disability, is legitimate. If the ALJ is referring to an environmental limitation which is relatively prevalent in the work place and thus significantly limits work opportunities, then the finding of this limitation makes it improper to use the grids, and proof of the availability of suitable work in the national economy would have to be demonstrated by other evidence, perhaps through a vocational expert familiar with the availability of such work.

We are unable to discern from the record whether appellant's environmental limitations are severe enough to prevent him from performing a wide range of light work. We thus remand to the district court, with instructions to remand to the Secretary, for further findings as to the extent of the environmental limitation and, if necessary, the taking of further evidence as to the existence of work which appellant is capable of performing in the national economy.

VACATED and REMANDED.