[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 18, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-12364
Non-Argument Calendar
_____

D. C. Docket No. 07-00845-CV-J-TEM

GARRETT PETTEWAY,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 18, 2009)

Before TJOFLAT, BLACK and WILSON, Circuit Judges.

PER CURIAM:

Garrett Petteway appeals the district court's order affirming the Commissioner of Social Security's denial of his application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). Petteway asserts the Administrative Law Judge (ALJ) erred by (1) determining Petteway's subjective complaints of pain were not entirely credible, (2) discounting the medical assessments of Petteway's treating physician, Dr. Christopher Leber, in arriving at his residual functional capacity (RFC), and (3) posing improper hypothetical questions to the vocational expert (VE). We address each issue in turn, and affirm.[1]

I.

Petteway asserts the ALJ erred by rejecting his complaints of pain because he did not articulate an evidentiary basis for doing so and the medical evidence corroborated his testimony. "[A] claimant's subjective complaints of pain cannot in and of themselves serve as conclusive evidence of disability. The record must document by medically acceptable clinical or laboratory diagnostic techniques the existence of a medical impairment which could reasonably be expected to produce the disabling pain." *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986). A

---

[1] When "the ALJ denies benefits and the [Appeals Council] denies review, we review the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review the Commissioner's factual findings with deference, and the "factual findings are conclusive if they are supported by substantial evidence, consisting of such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). However, we review the Commissioner's legal conclusions *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

three-part "pain standard" applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires: (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) the objectively determined medical condition is of such a severity it can be reasonably expected to give rise to the alleged pain. *Id.*

When a claimant testifies to subjective complaints of pain, the ALJ must clearly articulate adequate reasons for discrediting the claimant's allegations of disabling symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In articulating his reasons, the ALJ need not specifically refer to every piece of evidence, so long as the decision "is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered [the] medical condition as a whole." *Id.* at 1210-11 (quotation omitted). A clearly articulated credibility determination supported by substantial evidence will not be disturbed. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

The ALJ found Petteway's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but the objective medical evidence did not support the severity of the alleged limitations. In making his

3

credibility determination, the ALJ explicitly considered Petteway's testimony about his daily activities, his medication, and his course of treatment. Examination of the record shows that, despite Petteway's numerous visits for back pain, Petteway regularly stopped taking his pain medication for months at a time. Additionally, although Petteway testified the epidural injections were not helpful, he took several injections during the relevant period, and the medical evidence showed improvement after the injections. Further, contrary to Petteway's allegations of extreme pain, Dr. Fernandez, the medical expert, testified the medical evidence and the treating physician's assessment of Petteway's RFC did not support a pain level of eight. Specifically, Dr. Leber and Dr. Lipnick, both treating physicians during the insured period, indicated Petteway could perform light work and recommended Petteway begin a walking regimen. Similarly, the medical records show the two reviewing physicians found Petteway reported a higher level of pain than expected or supported by the medical evidence. Given this medical evidence, the ALJ's determination Petteway did not credibly testify regarding the intensity, persistence, and limiting effects of his symptoms was supported by substantial evidence. Because the ALJ offered clear and cogent reasons for his credibility determination, he did not commit reversible error in discounting Petteway's subjective complaints of pain. *See Dyer*, 395 F.3d at 1210.

II.

Petteway contends the ALJ erred by discounting the medical opinion of his treating physician, Dr. Leber,[2] because good cause did not exist to reject the opinion and the ALJ failed to provided adequate reasons for rejecting the opinion. The ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Absent the existence of "good cause" to the contrary, however, the ALJ must give the treating physician's testimony substantial weight. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41.

If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. *Id.* at 1241. We have found no reversible error "[w]here our limited review precludes re-weighing the evidence anew, and [where] the ALJ articulated specific reasons for failing to give [the treating physician's]

---

[2] Although Petteway references Dr. Robert Greenberg's RFC evaluation in support of Dr. Leber's assessment, Petteway never contests the ALJ's finding Dr. Greenberg's opinion was due little weight. Accordingly, Petteway has waived any claim regarding the ALJ's treatment of Dr. Greenberg's opinion. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding issues not argued on appeal are deemed waived, and a passing reference to an issue in a brief is insufficient to properly raise that issue).

opinion controlling weight" and these findings are supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). When the ALJ does not give the treating physician's opinion controlling weight, the ALJ applies other factors such as the length of treatment, the frequency of examination, the nature and extent of the relationship, the supportability of the opinion, its consistency with other evidence, and the specialization of the physician. *See* 20 C.F.R. § 416.927(d)(2)-(6).

Because "good cause" existed to reject the opinion of Petteway's treating physician, and the ALJ provided specific reasons for assigning less weight to the opinion, substantial evidence supported the ALJ's rejection of the opinion. *See Phillips*, 357 F.3d at 1240-41. The ALJ rejected Dr. Leber's conclusion Petteway would be absent from work four days a month. First, good cause existed to reject the opinion because Dr. Leber's conclusion was inconsistent with Petteway's medical records, which showed infrequent medical visits at intervals of two or more months. Additionally, Dr. Leber adopted the findings of the April 2003 functional capacity evaluation, which concluded Petteway could perform light-duty work. In fact, Dr. Leber told Petteway to look for a different type of employment consistent with the limitations of light work and refused to sign a form indicating Petteway was unable to work. Because the ALJ's conclusion Dr. Leber's opinion

6

was contrary to the medical evidence is supported by substantial evidence, the ALJ did not commit reversible error by rejecting his opinion. *See Phillips*, 357 F.3d at 1240-41.

### III.

Petteway contends the hypothetical posed to the VE was improper because it did not account for his subjective complaints of pain and did not include the proper restrictions. When a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the ALJ can determine whether a claimant can perform other jobs through the testimony of a VE. *Phillips*, 357 F.3d at 1240. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (quotation omitted). The ALJ is not required to include findings in the hypothetical that he properly finds are unsupported. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Because the ALJ properly found Petteway's testimony as to his subjective experience of pain was not entirely credible, Petteway has failed to show the hypothetical was deficient. Rather, the ALJ determined Petteway's restrictions

7

based on the physical limitations caused by the pain level supported by the objective medial evidence. In addition, the ALJ's hypothetical included all of Petteway's physical impairments supported by the record. The ALJ presented a hypothetical individual who (1) was Petteway's age and education level; (2) could lift and/or carry up to 10 lbs. freqeuntly and 20 lbs. occasionally; (3) could stand and/or walk and sit for about 6 hours each in an 8-hour workday; (4) should avoid bending, torso lifting, and climbing of ladders, although he could climb stairs occasionally; and (5) should avoid concentrated exposure to extreme cold, heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation and avoid even moderate exposure to hazards. These limitations were consistent with the medical evidence and with Petteway's own testimony. Therefore, the hypothetical posed to the VE was proper because it contained all of Petteway's credible impairments, including the physical limitations caused by the medically-supported level of pain. In response to the hypothetical, the VE testified there were a significant number of jobs in the national economy that an individual with those limitations could perform. Because the ALJ posed a proper hypothetical, the VE's testimony constitutes substantial evidence to support the denial of benefits. *See Ingram*, 496 F.3d at 1270. Accordingly, we affirm.

**AFFIRMED.**